**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 05-CR-49-LRR |
| vs. | |
| DANNY LEE RAPLINGER, | **ORDER** |
| Defendant. | |

---

### *TABLE OF CONTENTS*

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.  RELEVANT PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . **2**

III. TRIAL EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

    A.   E.S. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

    B.   Inspector Troy Raper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

    C.   Detective Jerry Michael . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

    D.   Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

IV.  MOTION FOR JUDGMENT OF ACQUITTAL . . . . . . . . . . . . . . . . . . **14**

    A.   Standard for Judgment of Acquittal . . . . . . . . . . . . . . . . . . . . **15**

    B.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
        1.   Count 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
        2.   Count 2 and Count 3 . . . . . . . . . . . . . . . . . . . . . . . . . **18**

V.   MOTION FOR NEW TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

    A.   Standard for New Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

    B.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**
        1.   State court convictions . . . . . . . . . . . . . . . . . . . . . . . . **20**

       2.     *Rule 412(b)(1)(B) "consent" evidence* . . . . . . . . . . . . . . . . **22**
       3.     *Final Jury Instruction No. 12* . . . . . . . . . . . . . . . . . . . . . **27**

**VI.**   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

## I.  INTRODUCTION

The matter before the court is Defendant Danny Lee Raplinger's Motion for Judgment of Acquittal and for New Trial ("Motion") (docket no. 117).

## II.  RELEVANT PRIOR PROCEEDINGS

The Superseding Indictment (docket no. 62)[1] charged Defendant with three crimes. Count 1 charged that, in late 2004, Defendant attempted to sexually exploit a minor and sexually exploited a minor, in violation of 18 U.S.C. § 2(a) and (b) and § 2251(a)[2] and

---

[1] On May 18, 2005, the grand jury charged Defendant in Count 1 of a two-count Indictment. Count 1 charged Defendant with attempted sexual exploitation of a minor and sexual exploitation of a minor, in violation of 18 U.S.C. § 2(a) and (b) and § 2251(a) and (e). Count 2 charged Defendant's co-defendant, Joel Rich, with the same crime. Rich ultimately pled guilty, and the court sentenced him to 210 months' imprisonment. *See United States v. Rich*, No. 05-CR-49-LRR (N.D. Iowa Feb. 14, 2006).

[2]       Any person who . . . uses, persuades, [or] induces . . . any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, . . . , with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such

                                            (continued...)

(e). Count 2 charged that, beginning no earlier than late 2004 and continuing through at least May of 2005, Defendant distributed child pornography, in violation of 18 U.S.C. § 2252A(a)(1)[3] and (b)(1). Count 3 charged that, in or about May of 2005, Defendant possessed child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B)[4] and (b)(2).

On September 25, 26 and 27, 2006, the court held a jury trial. Attorney Anne Laverty represented Defendant. Assistant United States Attorney Ian Thornhill represented the government. Defendant was personally present throughout the entire trial.

On September 27, 2006, the jury returned verdicts of guilty on all three counts of

---

[2](...continued)
> visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).

[3]
> Any person who . . . knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography . . . for purposes of inducing or persuading a minor to participate in any activity that is illegal[,] shall be punished as provided in subsection (b).

18 U.S.C. § 2252A(a)(1).

[4]
> Any person who . . . knowingly possesses any . . . film, . . . computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b).

18 U.S.C. § 2252A(a)(5)(B).

the Superseding Indictment. In a series of interrogatories, the jury also found, beyond a reasonable doubt, that various exhibits were child pornography. The jury found that he attempted to distribute them, distributed them or that they involved the Defendant's sexual exploitation or attempted sexual exploitation of a minor.

On October 9, 2006, Defendant filed the instant Motion. On November 6, 2006, the government filed a Resistance. Defendant did not file a Reply, and the court did not hold a hearing on the Motion. The Motion is fully submitted and ready for decision.

## III. TRIAL EVIDENCE

The government called three witnesses at trial: (1) E.S., grandmother of the fifteen-year-old minor victim, S.S., (2) Troy Raper, a United States Postal Inspector ("Inspector Raper"), and (3) Jerry Michael, a Benton County, Iowa, Sheriff's Office Detective ("Detective Michael"). After the government rested its case, Defendant testified on his own behalf. The court shall summarize the trial testimony:

### A. E.S.

E.S. is S.S.'s grandmother. E.S. and S.S. live in Blairstown, Iowa. E.S. testified that S.S. was born on August 13, 1989.[5]

### B. Inspector Troy Raper

In May of 2005, Detective Michael asked Inspector Raper to help him investigate the possible sexual exploitation of a fifteen-year old girl, S.S., in Benton County, Iowa. On May 4 or 5, 2005, Inspector Raper accessed the Internet and viewed Defendant's two Yahoo! profiles: "backtoo1" and "srlicksheralot." *See* Gov't Ex. 9 (printout of Yahoo! profile for "backtoo1") and Gov't Ex. 10 (printout of Yahoo! profile for "srlicksheralot");

---

[5] S.S.'s certified birth certificate, Government Exhibit 11, also states that S.S. was born on August 13, 1989.

4

*see also* Gov't Ex. 9-1 (full-size printouts of photographs available in the Yahoo! profile for "backtoo1"). Each profile contained autobiographical information and color images. The color images included photographs of Defendant having sex with S.S.

Government Exhibit 9 shows a photograph of Defendant in a cowboy hat. Next to the photograph is the following information:

> **Basics**
> Yahoo! ID: backtoo1
> Real Name: Dan
> Nickname: sex-addict-cowboy
> Location: cedar rapids
> Age:
> Marital Status: Single and Looking
> Gender: Male
> Occupation: i work
>
> **More About Me**
> **Hobbies:** movies,biking,swimming,bungee jump(intense)music(country boy at heart)hangin with friends(biggest bunch of smart asses youll ever meet)women(because there so damn beautiful) makin love by candelight o
> **Latest News:** sex sex and more sex. . . .1 woman 2 women cpls 3somes you name it i want to do more of the sam..a woman deserves to be pleased and i just want to help her in anyway i can if she wants

Gov't Ex. 9 (misspellings and grammatical errors in original). Government Exhibit 9 also contains thirty-one images. The images include photographs of the following: a red and black blindfold, a KISS condom and metal handcuffs; various poses of Defendant wearing a cowboy hat; a penis in various stages of erection; and Defendant having sex with S.S.

Government Exhibit 10 also shows a photograph of Defendant wearing a cowboy hat. Next to the photograph is the following information:

**Basics**
Yahoo! ID: srlicksheralot
Real Name: Dan
Nickname: luv2fuc247
Location: cedar rapids iowa
Age:
Marital Status: Single and Looking
Gender: Male
Occupation: ride rope and love

**More About Me**
**Hobbies:** all kinds of music but a country boy at heart history buff movie buff adventurous .ameture.porn(infront of or behind the cam)
**Latest News:** want to be your greatestlover,anthing less then 30 min just will not do

Gov't Ex. 10 (misspellings and grammatical errors in original). Exhibit 10 also contains twenty images. The images include photographs of Defendant posing in a cowboy hat; a penis in various stages of erection; and Defendant having sex with S.S.

On May 6, 2005, Inspector Raper searched Defendant's vehicle, a 1990 Chevy Astro Van, in Cedar Rapids, Iowa. The search was conducted pursuant to a warrant. Inside the van, Inspector Raper found a silver case, Government Exhibit 3, an opened package of Polaroid film, Government Exhibit 7, and a Polaroid camera, Government Exhibit 8. Inside the silver case, Inspector Raper found a set of metal handcuffs, Government Exhibit 4, a red and black blindfold, Government Exhibit 5, a KISS condom, Government Exhibit 6, and seven Polaroid photographs, Government Exhibits 2-1, 2-2, 2-3, 2-4, 2-5, 2-6 and 2-7.

Government Exhibit 2-1 depicts S.S. posing in fishnet attire. Government Exhibit 2-2 depicts S.S., unclothed, sucking her finger with Defendant's cowboy hat covering most

of her genitalia.  Government Exhibit 2-3 depicts Defendant kissing S.S. on a bed while S.S. touches her genitalia.  Government Exhibits 2-4, 2-5, 2-6 and 2-7 depict S.S. and Defendant having sex.

Inspector Raper found serial numbers on the Polaroid photographs, Government Exhibits 2-1 through 2-7, and on the Polaroid camera, Government Exhibit 8.  He called the Polaroid Corporation and provided one of its employees with the serial numbers. Based on the serial numbers, the employee determined that the Polaroid camera was manufactured in China in November of 2000, and the film was manufactured in Holland in August of 2004.  *See* Gov't Ex. 12 (Memorandum from Marianne Dilman, Polaroid Corporation Representative, to Inspector Raper, dated September 20, 2006).  The Polaroid Corporation has never manufactured such film or cameras in the State of Iowa.  *Id.*

Inspector Raper also contacted Yahoo!, Inc.  An employee of Yahoo!, Inc. indicated that, as of May of 2005, it did not have—nor ever had—computer servers located in the State of Iowa.  *See* Gov't Ex. 13 (Affidavit of Linda Isley, Yahoo!, Inc., Custodian of Records, dated September 25, 2006).  Information in Yahoo! profiles are stored in places other than Iowa.  *Id.*  As a consequence, communications sent or received by a Yahoo! user's computer located in Iowa are necessarily routed to Yahoo! servers in another state. *Id.*

### C.  Detective Jerry Michael

Detective Michael testified that S.S. had a Yahoo! profile.  Detective Michael found a digital copy of Government Exhibit 2-1 on S.S.'s profile.

On May 6, 2005, Detective Michael interviewed Defendant.  The interview was videotaped.  *See* Gov't Ex. 1 (interview).  During the interview, Defendant admitted the following:

In September of 2004, Defendant met S.S. in a chatroom while surfing the Internet

on his parents' computer and using his "backtoo1" Yahoo! profile. Initially, Defendant thought S.S. was a sixteen-year old girl named "Chloe" from Blairstown, Iowa. Defendant, who was thirty-four-years old, told S.S. he was twenty-seven-years old. Defendant stated that "girls" are not interested in men over the age of thirty.

Defendant and S.S. left the chatroom and continued their conversation on instant messenger ("IM"). While on IM, the conversation turned to the topic of sex. Sex is usually the first subject Defendant asks strangers about on the Internet.

S.S. gave Defendant her phone number. S.S. also told Defendant that she was, in truth, fifteen-years old. This revelation made Defendant nervous, because he knew it would be against the law to have sex with her.

In October of 2004, Defendant and S.S. met in person. After S.S.'s grandmother went to bed, S.S. snuck out of the house and met Defendant in a dark alley. Defendant had driven in his van approximately thirty miles from his trailer in Cedar Rapids to meet S.S. in Blairstown. Defendant characterized S.S. as a "wild girl," who liked to sneak out of the house.

Defendant drove S.S. to a secluded spot on a gravel road between a cornfield and a water plant. S.S. "made the first move" and performed fellatio on Defendant. Defendant ejaculated in S.S.'s mouth, and S.S. swallowed. Defendant and S.S. then went to the back of the van and had sexual intercourse. This time, Defendant ejaculated on S.S.'s back.

In the ensuing months, Defendant and S.S. talked on the telephone and had sex numerous times in Defendant's van and in his trailer. Defendant regularly drove to Blairstown in his van, and, on at least one occasion, he picked S.S. up from her school. S.S. met Defendant's six children and, according to Defendant, formed "a bond" with them.

Defendant and S.S. decided that Defendant would take photographs of S.S., and Defendant went to the store and purchased Polaroid film. Within a week and while they were together at Defendant's trailer, Defendant asked S.S. if she would be "OK" if he took some photographs of her. S.S. was wearing a black "see-through" blouse and a mini-skirt.

Defendant's friend, Joel Rich, a thirty-five-year old man from Cedar Rapids, took Polaroid photographs of Defendant and S.S. having sex. Approximately twenty photographs were taken, but Defendant only possessed seven of them. S.S. wrote "To Dan from Chloe" at the bottom of each of the seven photographs. These seven photographs are Government Exhibits 2-1 through 2-7.

After Rich took the photographs, S.S. told Rich she was fifteen-years old. This revelation made Rich nervous. S.S. performed fellatio on Rich, while Defendant watched naked.

Defendant described his relationship with S.S. as "friends with benefits."[6] In late 2004, it briefly metastasized into a "boyfriend-girlfriend" relationship. Defendant and

---

[6] A "friends with benefits" relationship is a relationship in which only sex is expected. *See In re Gildardo M.*, No. H024566, 2003 WL 1914165, at *2 (Cal. Ct. App. Apr. 22, 2003) ("One is a 'friend with benefits' if one does 'everything a boyfriend and a girlfriend do' without having the attendant social responsibilities of those relationships."); *State v. Dempsey*, No. 2003-CA-42, 2004 WL 67947, at *1 (Ohio Ct. App. Jan. 16, 2004) (defining "friends with benefits" as "apparently a phrase meaning that although they were not romantically involved, they would from time to time engage in sexual activity with another"). At the time, Defendant had a lot of "friends with benefits." Defendant was a "swinger." A "swinger" is a person who participates in "an alternative social and sexual lifestyle comprised mostly of mature adults who believe in sexual freedom and do not believe in sexual monogamy." *Connection Distrib. Co. v. Gonzalez*, No. 1:95CV1993, 2006 WL 1305089, at *2 (N.D. Ohio May 10, 2006). "Swingers" permit "their partners the freedom to experience sexual relationships with others." *Id.* S.S. was the only "under age girl" with whom Defendant had sex. Defendant also had sex with couples.

S.S. continued to talk on the telephone on a regular basis until his arrest in May of 2005.

Detective Michael confronted Defendant with the evidence gathered during the investigation. Defendant admitted that the "backtoo1" and "srlicksheralot" Yahoo! profiles were his and, for the most part, fully and accurately described them. Defendant admitted that the "backtoo1" profile contained photographs of him having sex with S.S. He denied that he had any photographs of S.S. on his "srlicksheralot" profile.

Defendant claimed ownership of the seven Polaroid photographs in the silver case. He admitted that these photographs showed him having sex with S.S. He stated that, after S.S. gave him permission, he scanned some of the photographs into his computer and uploaded them to his "backtoo1" Yahoo! profile.

### D. Defendant[7]

At trial, Defendant testified that he met S.S. in a chatroom for Iowans in August of 2004. Defendant was using the screen-name "backtoo1." S.S. was using the screen-name "chloe52318." Defendant admitted that "backtoo1" and "srlicksheralot" were his Yahoo! profiles.

After they met in the chatroom, Defendant and S.S. had private IM sessions. They chatted about sex. Ten to twenty minutes after they first chatted, S.S. gave Defendant her phone number. Defendant called S.S.

Defendant bought a web-cam. He took a photograph of himself wearing a cowboy hat and uploaded it to his Yahoo! profiles. Once S.S. saw this photograph, she wanted to meet Defendant. They talked on the phone and agreed to meet in Blairstown. S.S. gave Defendant directions.

---

[7] Defendant's trial testimony is very similar to his statements in the videotape. For the sake of completeness, the court repeats his testimony here.

Defendant drove his van to Blairstown and picked up S.S. in an alley behind her residence. They exchanged pleasantries, and then Defendant asked her "What do you want to do?" S.S. told Defendant that she knew "a place that we can go and we can just talk or do whatever you want." Defendant drove to the suggested spot, and they had sexual intercourse in the van.

Over time, Defendant and S.S. developed a "boyfriend-girlfriend" relationship. They exchanged letters and telephone calls, often speaking to each other one to five times a day. Defendant had sexual intercourse with S.S. in her grandmother's house.

On an unknown date in mid-November of 2004, Defendant and his childhood friend Joel Rich took Polaroid photographs of S.S. Defendant, Rich and a man known only as "Mike" were watching television in the living room of Defendant's trailer. S.S. was wearing a black mini-skirt, fishnet stockings and a black blouse. S.S. took Defendant by the hand and led him to his bedroom.

Defendant and S.S. started kissing. At trial, when Defendant's attorney asked him if he intended to take photographs of S.S., Defendant testified: "yes and no." Trial Transcript at 111. The following exchange then took place between Defendant and his attorney:

> Q.   Explain that for us.
> A.   [T]here was never really any discussion about Polaroid pictures, because . . . the incident was more of a . . . spontaneous kind of thing, because I remember . . . it was . . . maybe a few weeks before the incident that [S.S.] and I were together in my van . . . . . [S]he was sitting on the back seat, and it was just the way that she looked in the face, because she had the hair over her one shoulder, and she looked really, really good looking. I wasn't looking at her breasts or anything like that. I was concentrating on her face. And I just

mentioned it, that would be like the perfect picture.

. . . .

Q. Did you intend to take a picture at that point in time?

A. No.

Q. And did you have a camera with you?

A. No.

Q. Did you plan to take a picture later?

A. No.

Q. So when . . . you went into the room with S.S. on that night in the middle of November, did you intend to take a picture of her, why is that a ["yes and no"] answer?

A. The "yes" was . . . [that] we were going to take pictures, but it was not of her being naked or in any provocative way.

Q. [Y]ou were going to take some pictures of her with clothes on?

A. Yes.

Q. So what was intended?

A. Just some, I don't know, basic positions in her . . . in the outfit that she had worn that night.

. . . .

Q. Why would you want to take a picture like Exhibit 2-1?

A. No particular reason. It was just [a] bad choice, I don't know.

Q. Well, you say you wanted to take some pictures with her clothes on. Why did you guys want to have pictures?

A. There was no why.

. . . .

Q. [Was] Exhibit 2-1 . . . among the first ones you took?

A. Yeah, I believe that was the very first one.

Q. And who selected the pose?

A. There was no selection. She just struck a pose, and that was it.

Q. Whose idea was it to grab the camera?

A. Neither—neither's.

Q. Well, you said had you went back into the room, you

> laid down on the bed, and you were fully clothed and
> you were talking, and then kissing.
>
> A.    Yeah.
>
> Q.    And then what happened?
>
> A.    The kissing went to picking up the camera and taking
> that first shot that you just saw.

*Id.* at 111-14. Defendant stated that he took approximately ten to fifteen more photographs of S.S., including a photograph of her with Defendant's cowboy hat. They then got back on the bed and started kissing again.

Rich entered the bedroom. S.S. took off her skirt. Rich picked up the camera and started taking photographs of Defendant and S.S. Things got "hot and heavy" between Defendant and S.S., *id.* at 118, and they began to have sexual intercourse. Rich kept taking photographs. S.S. then performed fellatio on Rich. Defendant picked up the camera and took a photograph, that is, "a face shot of oral." *Id.* at 135. Part of Rich's penis was visible in the photograph.[8]

Defendant denied that he suggested that Rich take photographs or intended that Rich do so. When asked if it bothered him that Rich came in and started taking photographs, Defendant responded:

> [Rich] and I . . . meet people that are either swingers or that
> are looking for . . . certain women [that] have certain fantasies
> about being with two guys at one time, but most of them—
> most—all of them, all of them, are over the age of eighteen.
> [S.S.] is the first time I have ever done anything with a teenage

---

[8] The photograph was destroyed, and it was not part of the evidence introduced at trial. In an interrogatory, however, the jury stated that it did not find, beyond a reasonable doubt, "that [D]efendant's sexual exploitation of a minor included the taking or attempted taking of a photograph portraying S.S. performing a sex act upon Joel Rich." Interrogatory 1B (docket no. 109-1).

> girl, because . . . like I said in the taped confession, I have a
> lot of friends with benefits. And as long as I fulfill their wants
> and desires, they really don't have any objection to me being
> with other women.

*Id.* at 143-44.

Defendant denied that he enticed or induced S.S. to engage in sexual activity for the purpose of taking photographs. He stated that he intended to have sex with S.S., not to take photographs of her. It was "happenstance" that photographs were taken, *id.* at 121; it was a "spontaneous thing," *id.* at 122.

Defendant further testified that he only put the reference to an "ameture [sic] porn" hobby in one of his profiles "[t]o see what type of reaction I'd get . . . . [f]rom couples . . . ." *Id.* at 149. In Defendant's experience, the Internet is "[o]ne big singles bar," *id.* at 150, and couples like to have their photographs taken in sexual situations. Defendant also stated that he only wrote about his hobbies after he took the photographs of S.S. He admitted, however, that he uploaded photographs of S.S. to his profile.

Defendant testified that he continued to contact S.S. over the telephone until a day or two before his arrest. Their relationship never ended; it was "ongoing" at that time. *Id.* at 123.

## IV.  MOTION FOR JUDGMENT OF ACQUITTAL

Defendant moves for a judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29. Defendant claims there was insufficient evidence presented at trial to support the jury's guilty verdicts.

### A. Standard for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is

insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c). It is well-settled, however, that jury verdicts are not lightly overturned. *See, e.g., United States v. Peneaux*, 432 F.3d 882, 889 (8th Cir. 2005), *cert. denied*, 127 S. Ct. 42 (2006); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found Defendant guilty beyond a reasonable doubt. *Id.* Moreover, the court "must uphold the jury's verdict even where evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to weigh the evidence or evaluate the credibility of witnesses. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). That task is for the jury. *Id.*

### B. Analysis

#### 1. Count 1

Defendant contends that the government presented insufficient evidence at trial for the jury to find, beyond a reasonable doubt, that, in late 2004, he attempted to sexually exploit a minor or sexually exploited a minor, in violation of 18 U.S.C. § 2(a) and (b) and § 2251(a) and (e). Specifically, Defendant contends that there was reasonable doubt that he used, persuaded or induced S.S. to engage in sexually explicit conduct *for the purpose of producing any visual depiction of such conduct*. He argues that the evidence shows that he and S.S. mutually agreed "to engage in sexual intercourse for their own enjoyment, in furtherance of their growing emotional bond," and not for the purpose of taking photographs. Defendant points out that he testified that the photograph-taking was a

"spontaneous kind of thing." Defendant does not challenge the sufficiency of the government's proof as to the other elements of the crime.

The court finds that there was sufficient evidence for the jury to find Defendant guilty on Count 1. Defendant is correct that the government is required to prove that Defendant "voluntarily and intentionally [used, persuaded or induced S.S. to engage in any sexually explicit conduct] for the purpose of producing a visual depiction of such conduct." Final Jury Instruction No. 11 (docket no. 108); 18 U.S.C. § 2251(a). The government presented sufficient evidence to meet its burden of proof on this element. In the videotaped interview, Defendant admitted that he asked S.S. if she would be "OK" if he took some photographs of her; he admitted that they had previously talked about taking photographs before the date in question; and he made preparations for the photograph-taking by going to the store and purchasing Polaroid film. *Cf. United States v. Morales-De Jesus*, 372 F.3d 6, 21-22 (1st Cir. 2004) (rejecting claim by defendant that the visual depiction "came about by chance" and was not "for the purpose" of producing a visual depiction of sexually explicit conduct because, in part, the evidence showed that he planned to take the photographs in advance). Defendant later posted some of the photographs on the Internet, as part of his self-described "amateur porn" hobby. *Cf. id.* at 22 (rejecting claim by defendant that the visual depiction "came about by chance" and was not "for the purpose" of producing a visual depiction of sexually explicit conduct because, in part, the evidence showed that defendant had also videotaped he and his wife having sex). The jury was free to disbelieve Defendant's self-serving testimony at trial that the photograph-taking was spontaneous.

Undoubtedly, Defendant also wanted to use, persuade and induce S.S. into having sexual intercourse for the purpose of his own sexual gratification. However, the government was not required to prove that photograph-taking was Defendant's "only

purpose." Final Jury Instruction No. 13 (docket no. 108); *see, e.g.*, *United States v. Sirois*, 87 F.3d 34, 39 (2d Cir. 1996) (examining text of § 2251(a) and rejecting the conclusion that "the proscribed activity must be the sole dominant purpose") (citing, in part, *United States v. Drury*, 582 F.2d 1181, 1185-86 (8th Cir. 1978)). The government was only required to prove that such purpose was "one of [D]efendant's dominant purposes." Final Jury Instruction No. 13 (docket no. 108); *see, e.g., Sirois*, 87 F.3d at 39 (examining text of § 2251(a) and holding that the government only needed to prove that the proscribed activity was "one of [the defendant's] dominant motives").[9] "The criminal

---

[9] There is not an Eighth Circuit Model Jury Instruction for § 2251(a). However, the court's Final Jury Instructions are consistent with a noted treatise. It provides:

> It is possible that a defendant might argue that the sexual activity was the dominant purpose for his . . . conduct, and that the creation of the visual depiction was an incidental result of that conduct. In that case, the court should consider giving an instruction similar to the "significant and motivating purpose" instruction used in cases when the defendant is charged with transporting the minor across state lines.

3 L. Sand, *et al.*, *Modern Federal Jury Instructions—Criminal*, at 62-16 (2006). The treatise continues:

> The Mann Act [, 18 U.S.C. § 2421,] contains a similar provision, and in an early case involving that provision, *United States v. Mortensen*, [322 U.S. 369 (1944),] the Supreme Court stated in dictum that an intention to transport women across state lines for the purpose of prostitution "must be the dominant motive of such interstate movement." However, lower courts interpreting the Mann Act and related statutes after *Mortensen* have read this requirement more broadly, [*see, e.g., United States v. Vang*, 128 F.3d 1065, 1071-72 (7th Cir.

(continued...)

law applies to everyone, not just the single-minded." *Sirois*, 87 F.3d at 39. The jury was free to find that photograph-taking was one of Defendant's dominant purposes at the time.

Accordingly, the court finds that there was sufficient evidence to support Defendant's conviction on Count 1. The court shall deny Defendant's motion for judgment of acquittal as to Count 1.

### 2. Count 2 and Count 3

Defendant generally states that "[t]here was insufficient evidence to conclude that Defendant knowingly possessed and transported child pornography, and the court should enter a judgment of acquittal on those counts." However, Defendant does not elaborate on this claim or challenge any aspect or element of the crimes. The evidence against Defendant on Count 2 and Count 3 was overwhelming. Indeed, both at trial and in his self-described "taped confession," Defendant admitted that he possessed the child pornography and uploaded it to his Yahoo! profile. The court finds that there is sufficient evidence to support the jury's finding, beyond a reasonable doubt, that Defendant distributed child pornography, in violation of 18 U.S.C. § 2252A(a)(1), and possessed child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

---

[9](...continued)
> 1997) (citing, in part, *Reamer v. United States*, 218 F.2d 43, 49 (8th Cir. 1963) (Blackmun, J.) ] requiring not that the interstate travel be *the* dominant motive, but only that it be *a* dominant motive in that it was a compelling or significant motivation for the travel. The only court to address this issue specifically in the context of section 2251[, *United States v. Sirois*, 87 F.3d 34, 39 (2d Cir. 1996),] held that the same interpretation should be applied.

*Id.* at 62-18 (footnotes omitted, emphasis in original). Final Jury Instruction Nos. 11 and 13 are consistent with the less stringent standard.

## V.  MOTION FOR NEW TRIAL

Defendant moves for a new trial on all counts pursuant to Federal Rule of Criminal Procedure 33.  Defendant claims that the court erred when it (1) entered an order *in limine* that forbade Defendant from introducing evidence of his prior state-court convictions for Sexual Abuse in the Third Degree; (2) entered an order *in limine* "preventing Defendant from introducing evidence that S.S. consented and willingly engaged in sexual conduct with Defendant on the occasion in question, and that in fact she and Defendant had engaged in sexual activity many times in the past"; and (3) instructed the jury that "[a] minor may not legally consent to being sexually exploited."

### A.  Standard for New Trial

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if justice so requires."  Fed. R. Crim. P. 33(a).  A district court is granted broad discretion in considering a motion for a new trial.  *See Peters*, 462 F.3d at 957.  A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict."  *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (citation omitted).  However, the court "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'"  *See Peters,* 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

A district court enjoys more latitude in granting new trials under Rule 33 than in granting motions for judgment of acquittal under Rule 29; however, "[m]otions for new trials based on the weight of the evidence are generally disfavored."  *Campos*, 306 F.3d at 579.  District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)); *see also* Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 553 (3d ed. 2004) (stating that

granting a new trial under Rule 33 is an unusual remedy reserved for "exceptional cases in which the evidence preponderates heavily against the verdict").

## B. Analysis

### 1. State court convictions

Before trial, the government asked the court for an order *in limine* barring Defendant from referring to or presenting evidence of the fact that Defendant was convicted in state court on two counts of Sexual Abuse in the Third Degree, in violation of Iowa Code § 709.4 (2005),[10] for having sex with S.S. The court granted the government's motion and prohibited Defendant from introducing such evidence at trial. *See* Order (docket no. 96, at pp. 3-6) ("First Order"). In the Motion, Defendant renews his objection to the First Order. Defendant opines that "[t]he jury could reasonably have been misled and/or decided their verdict[s] on an emotional ground, out of concern that

---

[10]
    A person commits [S]exual [A]buse in the [T]hird [D]egree when the person performs a sex act under any of the following circumstances:

    . . . .

    2. The act is between persons who are not at the time cohabiting as husband and wife and if any of the following are true:

    . . . .

        c. The other person is fourteen or fifteen years of age and any of the following are true:

        . . . .

            (4) The person is four or more years older than the other person.

    Sexual abuse in the third degree is a class "C" felony.

Iowa Code § 709.4.

Defendant has not yet been punished for engaging in a sexual relationship with a fifteen year old girl."

As the court held in the First Order, any probative value that Defendant's convictions might have had in this case was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury and waste of time. Fed. R. Evid. 403. Specifically, the court finds that the fact that Defendant was convicted in state court on two counts of Sexual Abuse in the Third Degree for having sex with S.S. has little, if any, bearing on whether he committed the conduct necessary to prove that he sexually exploited a minor, distributed child pornography or possessed child pornography. The dangers of unfair prejudice, confusion of the issues, misleading the jury and waste of time are great. Not only are the state and federal charges different, but evidence of Defendant's state court convictions may have led the jury to the false conclusion that convicting Defendant on the instant federal charges would impermissibly punish him twice for the same conduct. The potential for confusion of the issues and undue prejudice substantially outweighs the minimal probative value of introducing evidence of such convictions. Defendant's argument is nothing more than an appeal to the passions of the jury and an effort to urge them to acquit Defendant because Defendant has already suffered some punishment for his interactions with the alleged victim. Defendant has not shown that a miscarriage of justice has occurred. *See Peters,* 462 F.3d at 957.

### 2. *Rule 412(b)(1)(B) "consent" evidence*

Defendant next contends that the court erred when it entered a second order in limine (docket no. 97) ("Second Order") "preventing Defendant from introducing evidence that S.S. consented and willingly engaged in sexual conduct with Defendant on the occasion in question, and that in fact she and Defendant had engaged in sexual activity many times in the past." Defendant contends that such evidence would have shown that

the primary purpose of the sexual activity on the night Defendant took the photographs of child pornography "was for Defendant and S.S.'s mutual pleasure and not for the purpose of producing a set of photos that Defendant ultimately planned to distribute on the [I]nternet."

Defendant's argument mischaracterizes the Second Order. The Second Order denied Defendant's Sealed Motion for Determination of Admissibility of Evidence Pursuant to Federal Rule of Evidence 412 ("Sealed Motion") (docket no. 80).[11] In the Sealed Motion, Defendant notified the court of his intention to offer evidence at trial that S.S. "consent[ed] to engage in the sexual behavior and 'lascivious exhibition' and . . . to be photographed in sexual or provocative poses." Specifically, Defendant sought to introduce evidence that S.S.: (1) engaged in sexual intercourse and fellatio with Defendant in October of 2004; (2) engaged in sexual intercourse and other sexual contact with Defendant ten or eleven times in Defendant's van and an additional ten or eleven times in Defendant's trailer, in late 2004 and early 2005; (3) engaged in "sexual acts" with Defendant in Defendant's trailer "more than fifty times" and in his van "about 'two dozen'" times at various unspecified times; (4) discussed "sexual issues" with Defendant over the telephone, on the Internet and in text messages "numerous times" in late 2004 and

---

[11] Federal Rule of Evidence 412 provides that "[t]he motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise." Fed. R. Evid. 412. Because the government, which is not constrained by Rule 412, offered into evidence the same evidence that Defendant proffered in the Sealed Motion and that was addressed in the Second Order, the court determines that the instant Order need not be sealed. *Id.* (permitting "related papers" to be unsealed on court order); *see, e.g., Doe v. United States*, 666 F.2d 43, 48 (4th Cir. 1981) (stating that Rule 412 does not mandate the sealing of the record and that the decision rests within the discretion of the trial court). Defendant's Exhibits A, B, C, and D (*see infra* Part V.A.2), however, shall remain sealed, because they were not part of the trial record in this case.

early 2005; (5) willingly performed fellatio on Rich in Defendant's presence in late 2004, "as demonstrative sexual foreplay"; and (6) kept photographs of her sexual encounters with Defendant and Rich and scanned and uploaded them to her Yahoo! profile.

Rule 412 is the so-called "Rape Shield Rule." *United States v. Richards*, 118 F.3d 622, 623 (8th Cir. 1997). It "generally prohibits the admission of evidence of a prosecuting witness's prior sexual acts." *Id*. Specifically, Rule 412 provides that "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" and "[e]vidence offered to prove any alleged victim's sexual predisposition" is inadmissible. Fed. R. Evid. 412(a). The purpose of Rule 412 is "to protect the alleged victims of sexual assault from harassment or embarrassment." *United States v. Bordeaux*, 400 F.3d 548, 558 (8th Cir. 2005) (citing *Ellsworth v. Warden*, 333 F.3d 1, 7 (1st Cir. 2003)).

The Sealed Motion sought to introduce such evidence pursuant to an exception set forth in Rule 412(b)(1)(B). That subparagraph states:

> (b) Exceptions.—
>
>> (1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:
>>> . . . .
>>> (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused *to prove consent* . . . .

Fed. R. Evid. 412(b)(1)(B) (emphasis added).

In the Second Order, the court denied the Sealed Motion, because consent is not a defense to Count 1 and, therefore, the exception of Rule 412(b)(1)(B) does not apply. The court wrote:

> By definition, the victim in a sexual exploitation of a minor

case is a minor. A minor cannot consent to being sexually exploited. *See United States v. Abad*, 350 F.3d 793, 798 (8th Cir. 2003) (recognizing that minors cannot consent to sexual assaults perpetrated against them).

> "[W]hen sexual assaults are committed upon children . . . , consent is not a defense. The reason is that the victims in these cases, because of ignorance or deceit, do not understand what is happening to them. Therefore their 'consent' is of no significance."

*Id.* (quoting *Guarro v. United States*, 237 F.2d 578, 581 (D.C. Cir. 1956)); *cf. United States v. Wiegand*, 812 F.2d 1239, 1245 (9th Cir. 1987) ("'Human dignity is offended by the pornographer. American law does not protect all human dignity; legally, an adult can consent to its diminishment. When a child is made the target of the pornographer-photographer, [18 U.S.C. § 2251(a)] will not suffer the insult to the human spirit, that the child should be treated as a thing.").

The Ninth Circuit Court of Appeals reached the same conclusion in a similar case. In *United States v. Dhingra*, 371 F.3d 557 (9th Cir. 2004), the defendant was charged with using the Internet to solicit sexual activity from a minor, in violation of 18 U.S.C. § 2422(b) (2000). *Dhingra*, 371 F.3d at 559. That statute criminalizes "'knowingly persuad[ing], induc[ing], entic[ing], or coer[cing]'" a minor to engage in criminal sexual activity. *Id.* at 560 n.4 (quoting 18 U.S.C. § 2422(b)).

At trial, the defendant in *Dhingra* proposed a jury instruction that would have required the jury to acquit him if it found that the victim induced him and the victim was at least partially willing to engage in the sexual conduct. *Id.* at 567. The trial court refused to give the instruction. *Id.* In affirming Dhingra's conviction, the Ninth Circuit Court of Appeals wrote:

Dhingra's argument collapses because he misconstrues the nature of liability under § 2422(b); his proposed jury instruction reflects this mistake. In effect, Dhingra claims that entrapment by the victim ameliorates any inducement on his part. Again, this reading of the statute mistakenly changes the focus from the defendant to the victim. The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation. So long as a defendant's actions constitute the act of persuading, inducing, enticing, or coercing a minor to engage in criminal sexual activity, § 2422(b) applies.

*Id.* at 567-68 (citation omitted). Similarly, S.S.'s willingness to engage in sexual activity is irrelevant to whether Defendant is guilty of violating § 2251(a). The issue is not S.S.'s willingness to have sex with Defendant, but whether Defendant used, persuaded or induced S.S. to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct. 18 U.S.C. § 2251(a).

Accordingly, because evidence of S.S.'s consent to being sexually exploited is not a defense to a § 2251(a) charge, such evidence is not "otherwise admissible" under Rule 412(b)(1)(B).

Second Order at 6-8 (footnotes omitted). In a footnote, however, the court noted that such evidence might be admissible for different reasons at trial, if circumstances warranted. *Id.* at 8 n.5 (discussing possible applicability of Fed. R. Evid. 412(b)(1)(C)).

As the court held in the Second Order, Rule 412(b)(1)(B) is an insufficient basis for admission of the proffered evidence, because consent is not a valid defense to Count 1.

At no time did the court rule that Defendant could not explain the background to the night in question or rule that Defendant could not offer the evidence to challenge the elements of the charged crimes. In any event, the government introduced nearly all of Defendant's proffered evidence to the jury at trial. Any additional evidence not so introduced was purely cumulative or irrelevant. The jury heard all of the relevant sordid details of Defendant's "relationship" with S.S.

Indeed, at trial the court only excluded four exhibits proffered by Defendant in an untimely manner. After the evidence had concluded, Defendant offered Defendant's Exhibits A, B, C and D as "a late attachment" to the Sealed Motion.[12] Defendant's Exhibit A and Defendant's Exhibit B are letters written from S.S. to Defendant in December of 2004 and January of 2005, respectively. Defendant's Exhibit C is S.S.'s "chloe52318" Yahoo! profile. A digital image identical to Government Exhibit 2-1 is posted next to her name. Defendant's Exhibit D is purportedly another one of S.S.'s Yahoo! profiles. The court excluded these four exhibits because Defendant failed to comply with the notification provisions of Rule 412. *See* Fed. R. Evid. 412(c)(1)(A) (requiring written notification fourteen days before trial); *see, e.g., United States v. Eagle Thunder*, 893 F.2d 950, 954 (8th Cir. 1990) (affirming exclusion of evidence) (citing *United States v. Provost*, 875 F.2d 172, 177 (8th Cir. 1989)); *see also United States v. Boyles*, 57 F.3d 535 (7th Cir. 1995) (similar). In any event, Defendant's Exhibits A through D were not admissible pursuant to Rule 412(b)(1)(B), because consent is not a defense to any count charged in the Superseding Indictment and, even if it were, the evidence is cumulative of evidence admitted at trial and hearsay-ridden. Defendant has not

---

[12] Counsel for Defendant explicitly stated that she was not offering the exhibits for any other purpose.

shown that a miscarriage of justice has occurred. *See Peters,* 462 F.3d at 957.

### 3.    *Final Jury Instruction No. 12*

In Final Jury Instruction No. 12, the court instructed the jury that "[a] minor may not legally consent to being sexually exploited." Final Jury Instruction No. 12 (docket no. 108). Defendant contends the court erred when it gave this instruction, because he never argued that consent was a defense to Count 1.

Final Jury Instruction No. 12 is a correct statement of the law. *See Abad*, 350 F.3d at 798 (recognizing that minors cannot consent to sexual assaults perpetrated against them). Moreover, in the court's view, the instruction was necessary, because defense counsel repeatedly tried to indirectly assert that S.S. consented to Count 1. For example, Defendant repeatedly testified about his "relationship" with S.S., about the provocative dress S.S. was wearing on the night in question and about S.S.'s seemingly willing participation in sex acts with Defendant and Rich. Defendant has not shown that a miscarriage of justice has occurred. *See Peters,* 462 F.3d at 957.

## VI.  CONCLUSION

Defendant Danny Lee Raplinger's Motion for Judgment of Acquittal and for New Trial (docket no. 117) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 29th day of November, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA